In re Shawn Forest GREGG, Melissa Marie Gregg, Debtors.

No. 07–60185.

United States Bankruptcy Court, S.D. Ohio, Eastern Division.

July 30, 2009.

Brian W Benbow, Benbow Law Offices, Zanesville, OH, for Debtors.

## ORDER ON TRUSTEE'S OBJECTION TO CLAIM # 1 OF JOHN RILEY

C. KATRYN PRESTON, Bankruptcy Judge.

Before the Court is the Trustee's Objection to Proof of Claim # 1 of John Riley (Doc. # 31) and the response thereto (Doc.

# 32) filed by John Riley. The Trustee objects to the Proof of Claim (the "Claim") on the basis that it lacked sufficient documentation to support the claim. John Riley responds that the Debtors were unjustly enriched at his expense, and requests that Claim # 1 be allowed. An evidentiary hearing was held on this matter on January 30, 2009. Present at the hearing were Creditor John Riley, Attorney Daniel Padden, representing John Riley, and Clyde Hardesty, the Chapter 7 Trustee.

The Court has jurisdiction over this matter pursuant to 28 U.S.C. Section 1334 and the General Order of Reference entered in this District. This is a core proceeding pursuant to 28 U.S.C. Section 157(b)(2)(B).

Based upon arguments presented and evidence adduced at the hearing, the Court finds and concludes as follows:

## I. Findings of Fact

On October 20, 2003,[1] Cynthia Northrup (hereinafter, "Northrup") entered into an agreement for the purchase of a 1996 14x60 Fleetwood mobile home and storage shed from Shawn Gregg and Melissa Gregg[2] (hereinafter, "Debtors"), for the sum of $8,500. Under this agreement, Northrup agreed to (1) make an initial down payment of $500 and pay the balance of the purchase price in 32 monthly installments of $250, (2) pay rent for the lot on

which the mobile home was situated in the amount of $155 per month starting on December 01, 2003, and (3) pay all property taxes on the mobile home starting in February 2004. The contract between Northrup and the Debtors stipulated that the title to the mobile home would be transferred to Northrup at the end of the term for payments. Northrup made timely monthly payments to the Debtors from December 1, 2003, until August 6, 2005, when she made the final payment to Debtors for the mobile home.[3]

On September 15, 2004, John Riley (hereinafter, "Riley")[4] entered into an agreement for the purchase of the mobile home and storage shed from Northrup[5] for the sum of $8,500. Per this agreement, Riley agreed to (1) make an initial down payment of $2,500 and pay the balance of the purchase price in 20 monthly installments of $300, (2) pay the lot rent in the amount of $155 per month starting on October 1, 2004, and (3) pay all property taxes on the lot and mobile home starting on January 1, 2005. This contract also stipulated that title to the mobile home would be transferred to Riley at the end of the term for payments. When he entered into this contract, Riley was not aware that the Debtors, along with Brenda J. Gregg, were the actual title holders to the mobile home. He did not personally know the Debtors or know of their contractual rela-

---

1. The contract between Northrup and Shawn Gregg is dated October 20, 2003, but was notarized on October 21, 2003.

2. Shawn Gregg, Melissa Gregg and Brenda J. Gregg jointly held title to the mobile home, however only Shawn Gregg and Melissa Gregg are Debtors, and only Shawn Gregg executed the purchase agreement with Northrup.

3. Northrup accelerated payments to the Debtors, resulting in satisfaction of her obligation early.

4. Riley entered the agreement as purchaser together with an individual named Jeannie Hiles; however, Hiles did not participate in filing the claim under consideration and does not appear to have a role in this dispute.

5. Northrup entered the agreement as vendor together with an individual named Rob Bronkar; however, Bronkar does not appear to have a role in this dispute.

tionship with Northrup. Riley made payments to Northrup pursuant to this contract from October 2004 until February 6, 2006, including a payment of $155.10 for taxes on February 6, 2006. Riley also made monthly payments for lot rent to a third party each month until August 6, 2006.

On March 4, 2006, Debtor Shawn Gregg sent Riley a letter asking for reimbursement of taxes paid on the mobile home in the amount of $280.02. However, there is no evidence Riley did so. In this letter, the Debtor also indicated a desire to meet and transfer title to the mobile home to Riley. Riley contacted the Debtor several times and they arranged to meet, but the Debtor failed to appear at any of these meetings. Title to the mobile home was never transferred to Riley. At some point prior to July 2007, Green Tree Financial Servicing Corp., who holds a lien on the mobile home, repossessed the mobile home.

On July 2, 2007, Riley filed suit in the county court of Muskingum County, Ohio for breach of contract, conversion and unjust enrichment, naming Cynthia Northrup, the Debtors, Brenda J. Gregg, Robert Bronkar, and Green Tree Financial as defendants. On December 19, 2007, the Debtors filed a Petition for Relief under Chapter 7 of the Bankruptcy Code. Northrup has also filed bankruptcy. On February 18, 2008, Riley filed a proof of claim in Debtor's bankruptcy estate. He has claimed $9,740.10 in unsecured debt, citing the payments of $8,500 for the mobile home and storage shed, $155.10 in property taxes and $1,085 for lot rent paid from February 2006 to August 2006.

## II. Discussion

█ Riley asserts a right to file a claim in the Debtors' case under the theory that Debtors were unjustly enriched at his ex-pense. Under Ohio law, a successful claim for unjust enrichment requires that (1) an economic benefit has been conferred by the creditor upon the debtor; (2) the debtor has knowledge of the benefit conferred; and (3) the debtor retained the benefit under circumstances where it would be unjust to do so without payment. *See Hummel v. Hummel*, 133 Ohio St. 520, 525, 14 N.E.2d 923 (1938); *Desai v. Franklin*, 177 Ohio App.3d 679, 689, 895 N.E.2d 875, 882 (2008).

█ The first element requires that the benefit must have been conferred directly upon that debtor by that creditor. *See Johnson v. Microsoft Corp.*, 106 Ohio St.3d 278, 286, 834 N.E.2d 791, 799 (Ohio 2005). This has been interpreted by Ohio courts to require an economic transaction between these two particular parties. *Id.* Riley asserts that the Debtors have been unjustly enriched because they have retained both the mobile home and the benefit of the payments. However, it appears that any such benefit conferred upon the Debtors would have come from Northrup, not from Riley. There is no evidence of any economic transaction or agreement for the sale of the mobile home between Riley and the Debtor. Riley made payments for the mobile home and reimbursement for taxes exclusively to Northrup. There is no indication, and Riley does not allege, that any payments were sent directly to the Debtors. While Riley did confer a benefit on Northrup without receiving title to the mobile home in accordance with their contract, Riley did not confer any benefit directly on the Debtors.

Furthermore, the lot rent payments from February 2006 to August 2006, which Riley claims were made following the Debtors' refusal to transfer title to Riley, were not made to the Debtors or Northrup, but to a different third party. It further appears that the Debtors did not re-

side on that particular lot; thus, they did not receive or retain any economic benefit from Riley by these rent payments to the third party. Therefore, Riley fails to satisfy the first element of unjust enrichment because he did not confer an economic benefit on Debtors.

The second element requires a showing that the debtor had knowledge of the benefit conferred by that particular creditor. *See Sylvester Material Co., Inc. v. Environmental Network and Management Corp.*, 1999 WL 1243209 (Ohio Ct.App. Dec.22, 1999). There is no evidence to support the notion that Debtors had knowledge that Riley was making payments to Northrup for the mobile home at the time that Riley was actually making these payments, i.e. conferring the benefit. Riley was not aware the Debtors were the actual title holders of the mobile home until after final payment on February 6, 2006, at which point he learned they were the true title holders and initiated contact with them. There is no basis to conclude or infer that the Debtors knew of Riley's involvement with the purchase of the mobile home until March 4, 2006, when the Debtors sent Riley a letter asking for payment of additional property taxes and expressing a desire to meet and transfer title.

Although Riley continued to make lot rent payments following this date, these payments were not a benefit conferred on the Debtors and thus their knowledge of this particular benefit to a third party is irrelevant. Therefore, Riley has also failed to sufficiently prove the second element for unjust enrichment because the Debtors did not have knowledge of the benefit conferred by Riley. Because this claim fails on the first two elements, it is not necessary to address the third.

## III. Conclusion

Riley has failed to sufficiently support his claim against the Debtors' estate under a theory of unjust enrichment because he did not show that he conferred a benefit specifically on the Debtors or that the Debtors had knowledge that Riley was conferring a benefit. Thus, his claim is unenforceable and must be disallowed pursuant to 11 U.S.C. Section 502(b)(1).

Accordingly, the Trustee's objection to the allowance of Claim # 1 of John Riley is SUSTAINED, and Claim # 1 of John Riley is disallowed.

**IT IS SO ORDERED.**